# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
# MARTINSBURG

**WALLACE ALAN EDGELL,**

    Plaintiff,

v.                                                                  **CIVIL ACTION NO.: 3:14-CV-82**
                                                                              **(GROH)**

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

## MEMORANDUM OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION IN PART

This matter is before the Court for consideration of the Report and Recommendation ("R&R") of United States Magistrate Judge Robert W. Trumble. By Standing Order, this action was referred to Magistrate Judge Trumble for submission of a proposed R&R. Magistrate Judge Trumble filed his R&R [ECF 28] on May 4, 2015. The R&R recommends that the Court grant Plaintiff Wallace Alan Edgell's Motion for Summary Judgment [ECF 10], deny the Commissioner of Social Security's Motion for Summary Judgment [ECF 23] and remand this case for further proceedings. The Commissioner objects to the R&R. For the following reasons, the Court **SUSTAINS** the Commissioner's objections and **REJECTS** the R&R **IN PART**.

### I. Background

On May 20, 2011, Wallace Alan Edgell applied for disability insurance benefits, alleging that he had a disability beginning on August 31, 2009. Edgell's application was

1

denied initially and on reconsideration. Edgell requested a hearing before an ALJ. The ALJ held a hearing on November 30, 2012 and issued a decision denying Edgell benefits on January 4, 2013.

Edgell sought review with the Appeals Council. In doing so, he submitted three items of new evidence to the Appeals Council: (1) a medical source statement from Dr. Catherine Chua, his treating physician; (2) a medical source statement from Dr. Shelly Kafka, his treating rheumatologist; and (3) a functional capacity evaluation from John DiBacco, a physical therapist. The Appeals Council denied Edgell's request for review, rendering the ALJ's decision the final decision of the Commissioner.

On July 22, 2014, Edgell filed this action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's decision denying his claim for disability insurance benefits. After submitting the administrative record, both parties moved for summary judgment. Edgell requests summary judgment on three grounds. First, he avers that the ALJ did not properly evaluate his credibility. Second, he argues the ALJ's residual functional capacity ("RFC") analysis was erroneous. Third, Edgell contends that the Appeals Council should have remanded this case based on the new evidence he submitted. On May 4, 2015, the magistrate court issued an R&R recommending that the Court grant summary judgment for Edgell and remand this case for further proceedings. The Commissioner timely objected to the R&R. Edgell did not submit objections, but responded to the Commissioner's objections.

## II. Standards of Review

### A. Review of the R&R

This Court must review *de novo* those portions of the magistrate judge's findings to

which Edgell objects. 28 U.S.C. § 636(b)(1)(C). Failure to file objections, however, permits the district court to review the R&R under the standards that the district court believes are appropriate, and, if parties do not object to an issue, the parties' right to *de novo* review is waived as to that issue. See Webb v. Califano, 468 F. Supp. 825 (E.D. Cal. 1979). Thus, this Court will review *de novo* those portions of the R&R to which the Commissioner objects and the remaining portions of the R&R for clear error.

### B. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Thus, the Court must conduct "the threshold inquiry of determining whether there is the need for a trial–whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250.

The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). That is, once the movant has met its burden to show an absence of material fact, the party opposing summary judgment must come forward with affidavits or other evidence demonstrating there is a genuine issue for trial. Fed. R. Civ. P. 56; Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the

3

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted). A motion for summary judgment should be denied "if the evidence is such that conflicting inferences may be drawn therefrom, or if reasonable men might reach different conclusions." Phoenix Savs. & Loan, Inc. v. Aetna Cas. & Sur. Co., 381 F.2d 245, 249 (4th Cir. 1967); see also Anderson, 477 U.S. at 253 (noting that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge").

### C. Review of the ALJ's Decision

The Social Security Act limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390 (1971), and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The phrase "supported by substantial evidence" means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Perales, 402 U.S. at 401 (citation and quotation marks omitted).

A reviewing court must not re-weigh the evidence or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456. Ultimately, it is the duty of the ALJ reviewing a case, not the responsibility of the Court, to make findings of fact and to resolve conflicts in the evidence. King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This Court does not find facts or try the case *de novo* when reviewing disability determinations.").

### III. The ALJ's Evaluation Process

To determine whether a claimant is disabled, the ALJ conducts a five-step evaluation

process. 20 C.F.R. § 404.1520(a)(4). If the ALJ finds that the claimant is disabled or not disabled at a step, the analysis ends. Id. The steps are:

> Step One: Determine whether the claimant is engaging in substantial gainful activity;
>
> Step Two: Determine whether the claimant has a severe impairment;
>
> Step Three: Determine whether the claimant has a listed impairment (20 C.F.R. Part 404, Subpart P, Appendix 1) and conduct a Residual Functional Capacity ("RFC") assessment;
>
> Step Four: Consider the RFC assessment to determine whether the claimant can perform past relevant work; and
>
> Step Five: Consider the RFC assessment, age, education, and work experience to determine whether the claimant can perform any other work.

Davidson v. Astrue, Civil Action No. 2:11-CV-55, 2012 WL 667296, at *3 (N.D.W. Va. Feb. 28, 2012) (citing 20 C.F.R. § 404.1520(a)(4)).

At step one, the ALJ found Edgell had not engaged in substantial gainful activity since the alleged onset date. For step two, the ALJ determined that Edgell had the following impairments that, individually or in combination, are severe: "Systemtic Lupus Erythematosus; 'Non-Severe' Hypertension; 'Non-Severe' GERD/Diverticulosis; 'Non-Severe' Sinusitis/Bronchitis; 'Non-Severe' Hyperlipidemia; 'Non-Severe' Arteriosclerosis; 'Non-Severe' Vitamin D insufficiency; and 'Non-Severe' Hyperuricemia."

At step three, the ALJ determined that Edgell did not have a listed impairment and found that he had the following RFC:

> 5. Since August 31, 2009, the claimant has had only the residual functional capacity to perform a range of work activity that: requires no more than a "light" level of physical exertion; entails no crawling or climbing of ladders/ropes/scaffolds and no more than occasional performance of other postural activities; entails no exposure to cold temperature extremes; and no concentrated exposure to hot temperature extremes, wet conditions,

5

vibrations, and hazards (e.g., unprotected heights, moving mechanical parts)[.]

In reaching this RFC, the ALJ outlined Edgell's subjective allegations of disability since the alleged onset date and discredited them:

> In conjunction with his application for social security disability benefits, the claimant has alleged rheumatoid arthritis and high blood pressure have limited his ability to sustain consistent employment since August 31, 2009. (Exhibit 3E2). On June 3, 2011, the claimant complained in an Adult Function Report of continuing pain, swollen joints, and limited mobility mostly during flare ups. (Exhibit 4E). On August 26, 2011, the claimant reported in an Adult Function Report that the pain and swelling in his hands affected everything that he did. He reported that on most occasions he was unable to engage in small tactical work such as computer work. (Exhibit 10E1). The claimant further alleged significant limitations during the November 2012 disability hearing. However, from thoroughly evaluating the evidence of record, the credibility of the claimant's subjective allegations are substantially undermined.
>
> Overall, the credibility of the claimant's subjective allegations are tarnished by a number of considerations. The full longitudinal record of evidence readily demonstrates that the claimant's allegations of the disabling nature of his alleged impairments are significantly undermined by his daily activities. The claimant's activities do not comport with a person who is subjected to greater limitations than those found in the above Residual Functional Capacity. More specifically, the claimant has worked as a golf coach throughout the period at issue and has frequently golfed throughout the relevant period of time. The claimant in adult disability documentation reported that he was a golf coach from June 2010 through the present working 3 hours per day for five days a week. (Exhibit 3E). The claimant has in fact reported earnings of $750.00, $3,000.00, $1,500.00, $1,250.00, $7,000.00, $3,000.00, $3,000.00, and $2,000.00 for the 3rd quarter of 2010, 4th quarter of 2010, 1st quarter of 2011, 2nd quarter of 2011, 3rd quarter of 2011, 4th quarter of 2011, 1st quarter of 2012, and 2nd quarter of 2012, respectively. (Exhibits 2D and 5D). It is further noted that in conjunction with a June 3, 2011 Adult Function Report, the claimant reported having no problems with his personal care and being able to engage in a small amount of cleaning and household repairs. The claimant further reported that he was able to walk and drive an automobile. He also indicated that he was able to shop in stores, pay bills, count change, handle a savings account, and utilize a checkbook/money order. The claimant also indicated that he was able to spend time with others including attending sporting events on a regular basis. The claimant also failed to report having any problems with memory,

6

completing tasks, concentration, understanding, following instructions, and getting along with others. (Exhibit 4E). In conjunction with an August 26, 2011 Function Report, the claimant repied that he was able to engage in light cleaning, but could not do repairs, ironing, or mowing. However, the claimant reported that he was able to walk, drive an automobile, and shop in stores along with paying bills, counting change, and handling a savings account. He also indicated that he was able to eat out on a daily basis. He further failed to report any problems with his memory, concentration, understanding, following instructions, and getting along with others. (Exhibit 10E). As will be further discussed below, the claimant frequently reported improvement and engaging in physical activities including golfing. Finally, at the November 2012 disability hearing, the claimant testified that he played golf five times a week during the past summer. He also testified under oath that in conjunction with his golf coaching job he was also able to engage in administrative work and worked with other golfers on their grades. The undersigned finds the aforesaid not to be consistent with the presence of a compensable condition. Further, the aforementioned testimony and Function Reports are not demonstrative of any need for mental restrictions in the above Residual Functional Capacity.

The ALJ then stated that, having reviewed the medical evidence of record, he was "convinced that the claimant has overstated the severity of his condition" and discussed evidence from Edgell's treating physicians. The ALJ also afforded great weight to a state agency medical consultant who had assessed Edgell as having a "light" physical exertional capacity. After conducting the foregoing analysis, the ALJ summarized the reasoning underlying the RFC:

> The foregoing evidence does indicate the claimant to have abnormalities which are likely to impose some functional limitations. However, the undersigned finds that such objective medical evidence is not indicative of any intractable condition that would preclude the claimant from performing the above found work activity for 12 consecutive months. The claimant has a treatment history which fails to demonstrate a compensable condition(s), and he has engaged in significant activities including frequent golfing and coaching of golf  The above found Residual Functional Capacity further sufficiently accommodates for the effects that the above found "Non-Severe" impairments may have upon the claimant's functionality. Ultimately, in light of the claimant's own reports in Adult Function Reports, his testimony, and the above medical evidence, the undersigned does not find for any mental restrictions in the above Residual Functional Capacity. Thus, the

7

Administrative Law Judge is convinced that the claimant has remained essentially capable of performing at least such limited range of work as has been defined within the parameters above. Therefore, having singularly had the opportunity to review the entire longitudinal record and to hear and observe the claimant's demeanor and sworn testimony at a hearing, the undersigned concludes that the claimant's various impairments have combined since August 31, 2009, to impose only such functional limitations as have been defined within the parameters above.

Finally, at step four, the ALJ found no disability, stating that Edgell could perform his past relevant work as a Federal Court Clerk.

## IV. Discussion

The R&R recommends granting summary judgment for Edgell on the basis that the Appeals Council erred in denying Edgell's request for review because Dr. Chua's medical source statement is new and material evidence justifying remand. The Commissioner objects to this portion of the R&R.

The magistrate court rejected Edgell's other arguments, finding that the other new evidence submitted to the Appeals Council did not require remand, that the ALJ properly evaluated Edgell's credibility and that the ALJ's RFC analysis was proper. Because neither party objects to these portions of the R&R, the Court reviews them for clear error and finds none. Thus, the Court reviews *de novo* only the portion of the R&R regarding whether the Appeals Council should have remanded this case based on Dr. Chua's medical source statement.

If a claimant is dissatisfied with an ALJ's decision, he "may request that the Appeals Council review that action." 20 C.F.R. § 404.967. When that occurs, "[t]he Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an [ALJ]." Id. The regulations allow a claimant to

8

submit additional evidence that was not before the ALJ when seeking review by the Appeals Council. 20 C.F.R. §§ 404.968, 404.970(b). When such evidence is submitted, "the Appeals Council first determines if the submission constitutes 'new and material' evidence that 'relates to the period on or before the date of the [ALJ's] hearing decision.'" Meyer v. Astrue, 662 F.3d 700, 704-05 (4th Cir. 2011) (quoting 20 C.F.R. § 404.970(b)).

When faced with new and material evidence, "the Appeals Council then 'evaluate[s] the entire record including the new and material evidence.'" Id. (quoting 20 C.F.R. § 404.970(b)). After doing so, if the Appeals Council "finds that the [ALJ's] action, findings, or conclusion is contrary to the weight of the weight of the evidence currently of record," 20 C.F.R. § 404.970(b), "it will grant the request for review and either issue its own decision on the merits or remand the case to the ALJ." Meyer, 662 F.3d at 705 (citing 20 C.F.R. §§ 404.967, 404.977(a), 404.979). However, "if upon consideration of all the evidence, including any new and material evidence, the Appeals Council finds the ALJ's action, findings, or conclusion not contrary to the weight of the evidence, the Appeals Council can simply deny the request for review." Id.

Moreover, "[i]n reviewing the Appeals Council's evaluation of new and material evidence, the touchstone of the Fourth Circuit's analysis has been whether the record, combined with the new evidence, 'provides an adequate explanation of [the Commissioner's] decision.'" Turner v. Colvin, Civil Action No. 0:14-cv-228-DCN, 2015 WL 751522, at *5 (D.S.C. Feb. 23, 2015) (quoting Meyer, 662 F.3d at 707). A reviewing court "must review the record as a whole, including the new evidence, in order to determine whether substantial evidence supports the Secretary's findings." Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991); see also Meyer, 662 F.3d at 707

9

(noting that the Fourth Circuit has affirmed denial of benefits after considering new evidence presented to the Appeals Council upon finding "that substantial evidence support[ed] the ALJ's findings").

The Fourth Circuit, however, has remanded a case–Meyer–because it could not "determine whether substantial evidence support[ed] the ALJ's denial of benefits." Meyer, 662 F.3d at 707. In Meyer, the ALJ did not have opinions from the claimant's treating physicians. Id. at 703. In his decision denying benefits, "[t]he ALJ emphasized that '[g]iven the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating physician,' yet a review of the records . . . reveals no [such] restrictions.'" Id. In seeking review with the Appeals Council, the claimant submitted an opinion from a treating physician. Id. The Appeals Council made the opinion part of the record, but determined it did not justify changing the decision. Id. at 704. In remanding the case, the Fourth Circuit noted that the ALJ had "emphasized that the record before it lacked 'restrictions placed on the claimant by the treating physician,' suggesting that the evidentiary gap played a role in its decision." Id. at 707. The Fourth Circuit then explained that this opinion corroborated another physician's opinion that the ALJ had rejected but conflicted with evidence the ALJ had credited. Id. Thus, because the new evidence filled an "evidentiary gap" that played a role in the ALJ's decision, the Fourth Circuit could not conduct the substantial evidence analysis and found remand appropriate. See Turner v. Colvin, Civil Action No. 0:14-cv-228-DCN, 2015 WL 751522, at * (D.S.C. Feb. 23, 2015) (finding that a letter submitted to the Appeals Council did not justify remand under Meyer as it did not fill an "evidentiary gap"); Miller v. Colvin, Civil Action No. 1:12-CV-371-GCM, 2014 WL

2208119, at *4 (W.D.N.C. May 28, 2014) (finding Meyer inapplicable because ALJ did not note "evidentiary gap"); Davis v. Astrue, Civil Action No. 5:11-405-JFA-KDW, 2012 WL 4479252, at *3 (D.S.C. Sept. 27, 2012) (distinguishing Meyer on the basis that letters submitted to Appeals Council "did not fill in an evidentiary gap that played a role in the decision of the ALJ").

In this case, the R&R recommended remand based on the reasoning of Meyer, that is, because Edgell submitted a treating physician opinion that was not part of the record before the ALJ, it cannot be determined whether substantial evidence supports his decision. The Commissioner argues that, while Dr. Chua's statement is new and material, it does not require remand because Meyer does not apply and substantial evidence supports the ALJ's decision.

As a primary matter, the Court can determine whether substantial evidence supports the ALJ's decision because, unlike Meyer, Dr. Chua's statement did not fill an "evidentiary gap" that played a role in the ALJ's decision. The ALJ's decision does not mention that the record lacked such evidence. Thus, although Edgell supplied a treating physician opinion to the Appeals Council like Meyer, remand is not warranted on that basis alone as the ALJ's decision did not depend on the absence of such evidence.

Now considering whether substantial evidence supported the ALJ's decision, one could reasonably find the RFC reached by the ALJ based on Edgell's testimony that he engaged in significant daily activities (including, as the ALJ emphasized, his frequent coaching and playing of golf), the records from Edgell's treating physicians that indicated Edgell improved with medical treatment and the state agency medical consultant's determination that Edgell had a "light" physical exertional capacity. Accordingly, the

Appeals Council did not err in denying Edgell's request for review because substantial evidence supported the ALJ's decision. The Court therefore sustains the Commissioner's objections and grants summary judgment in the Commissioner's favor.

## IV. Conclusion

Upon review of the above, the Court **SUSTAINS** the Commissioner's objections. It is the opinion of this Court that the Report and Recommendation should be, and is, hereby **ORDERED REJECTED IN PART**. Specifically, the Court **REJECTS** Section C.1.a. of the Report and Recommendation and the recommendation that this Court grant summary judgment in favor of the Plaintiff. The Court **ADOPTS** the remainder of the Report and Recommendation to the extent that it is consistent with this Order.

Accordingly, the Court **GRANTS** the Commissioner's Motion for Summary Judgment and **DENIES** the Plaintiff's Motion for Summary Judgment.

The Court further **ORDERS** that this matter be **DISMISSED WITH PREJUDICE** and that it be **STRICKEN FROM THE DOCKET OF THIS COURT**.

The Clerk is **DIRECTED** to enter judgment in favor of the Commissioner.

The Clerk is directed to transmit copies of this Order to all counsel of record.

**DATED**: June 23, 2015

GINA M. GROH
CHIEF UNITED STATES DISTRICT JUDGE